No. 36,891

A. C. MOORHEAD, *Appellant*, v. WALLACE GULIFORD, *Appellee*.

(186 P. 2d 275)

FRANK O. RINDOM, judge. Opinion filed November 8, 1947.

*J. S. Brollier*, of Hugoton, argued the cause, and *Charles M. Tucker, Charles Vance* and *H. Hobble, Jr.*, all of Liberal, were with him on the briefs for the appellant.

*Carl Van Riper, James A. Williams*, both of Dodge City, and *C. T. Parker*, of Hugoton, were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an equitable action to quiet title to real estate.

Judgment was entered adjudging plaintiff to be the owner of only an undivided one-sixth interest. He appeals because he was not adjudged to be the sole owner.

There is not much dispute about the facts. Hattie Pearl Eidson died on February 15, 1936, and left the quarter section in question to five sons and one daughter. Following probate court proceedings each child was, on December 4, 1944, decreed to be the owner of an undivided one-sixth interest. On March 1, 1940, there was filed in the district court of Stevens county an action to foreclose a tax lien on the property. All but one of the heirs were made defendants. Personal service was had on one of the heirs, service by publication on four and no service on the one who was not a party.

On June 6, 1940, a judgment was entered holding the land to be subject to a tax lien in the amount of $220. It was sold for $105 on August 12, 1940, and on September 7, 1940, the sale was confirmed and on the same date a sheriff's deed was issued to G. G. Railsback. This deed was not placed on record until December 21, 1945. On January 18, 1946, Railsback executed and delivered to the defendant in this action a quitclaim deed to the land in question.

On January 21, 1945, plaintiff obtained a warranty deed to the real estate in question from four of the heirs. This deed was recorded February 17, 1945. That from the others was recorded April 16, 1945. One of the heirs was a minor and in proceedings about which there is no dispute a guardian's deed was executed and delivered to plaintiff on May 15, 1945, and recorded on the same date. On paper these conveyances gave plaintiff sole title to the real estate in question.

Plaintiff inspected the land before he bought it and saw that it was not in cultivation, was not fenced, was unoccupied and was not being grazed. Plaintiff had no actual knowledge or notice that the land had been foreclosed for taxes or that Railsback had any interest in it.

There was undisputed evidence that plaintiff paid $1,100 for the land; that he had an abstract of title made before the purchase price was paid; that the abstractor checked the records in the office of the register of deeds and the probate and district courts and found no record of the tax foreclosure suit, action or judgment; that the abstractor helped prepare the action to foreclosure; that there were over 1,200 pieces of real estate involved in it and he did not

remember about this particular piece and at the time he discussed the abstract with plaintiff he did not know about the sheriff's deed; that the records showed the taxes paid up to 1938; and that at the time plaintiff bought the land they were paid from that date to the date of the conveyance out of the purchase price plaintiff paid. The lawyer who examined the title testified he examined the records in the office of the register of deeds and the clerk of the court and found nothing which would lead him to believe the property had been sold for taxes.

The trial court found that defendant was the owner of an undivided five-sixths interest in the property and plaintiff was the owner of an undivided one-sixth interest, certain equitable adjustments as to the undivided one-sixth interest of plaintiff in the crops on the land were made by the trial court on account of defendant having been in possession.

Succinctly the facts may be stated thus: Defendant received a sheriff's deed to the land in question as a result of a suit to foreclose a tax lien. He did not record this deed for five years, three months and fourteen days after it was issued. During all that time the record title stood in the name of the six heirs of Hattie Eidson. The records in the office of the clerk of the district court did not show that any of these heirs had been made a party to the general action to foreclose tax liens. While the title to the land in question thus stood in the name of the six heirs they conveyed the land to plaintiff for a valuable consideration. The plaintiff at the time he paid the consideration and accepted the deeds from the heirs had no actual knowledge or notice of the existence of the sheriff's deed. At that time he inspected the land and found it to be uncultivated, ungrazed, unfenced and without improvements.

Defendant argues that the tax foreclosure statute, G. S. 1945 Supp. 79-2801 to 79-2809, is the exclusive remedy for the foreclosing of tax liens; that upon his purchase of the land he became the equitable owner of it and when the sale was confirmed and the sheriff's deed executed and delivered to him he became the owner of the fee simple title and the plaintiff, therefore, had constructive notice of that fact and purchased the land subject to the rights of the purchaser at the tax foreclosure sale.

At the outset we should deal with the argument of defendant that G. S. 1945 Supp. 79-2801 to 79-2809 is full and complete as to pro-

cedure and remedy and no provision of the code may be considered when construing procedures under it. We have never held that pertinent provisions of the code of civil procedure had no place in considering a construction of the tax foreclosure act. There are many procedural steps in carrying on a tax foreclosure action where the code must be followed. For instance, the first section of the act provides for service of summons and for service by publication, as provided in the code. Where there is a procedural step which is not clearly provided for in the tax foreclosure statute we will look to the code just as in other actions.

Having reached the above conclusion, we must first examine the tax foreclosure statute. We will consider G. S. 1945 Supp. 79-2804. That section provides for certain procedural steps. The first step is the order of sale. Next, the actual sale by the sheriff and that officer's return thereof. Next, the execution and delivery of a deed and its form. The section then provides:

"When said deed is filed for record in the office of the register of deeds of the county where such real estate is situated, it shall vest in the purchaser or grantee therein named, as against all persons, including, but not limited to, corporations and municipal corporations, parties to such proceedings, a fee-simple title thereto, subject only to valid covenants running with the land and valid easements of record in use and subject to taxes and interest which have become a lien thereon, subsequent to the date upon which such judgment was rendered, and said deed shall be prima facie evidence of the regularity of all proceedings prior to the date of filing the same for record as aforesaid."

It will be noted the statute provides specifically for the passing of title on the filing of the sheriff's deed for record. Naturally the execution and delivery of a sheriff's deed after the sale was confirmed would have passed title even if the above quoted provision had not been in the statute. There would be no reason for the inclusion of this particular provision other than to fix the time of the passing of title as the time when the sheriff's deed was recorded. The legislature must have so intended. As a matter of fact that is what the statute says. Had that provision not been in the statute, then a plausible argument could be made that title was vested in the purchaser when the sheriff's deed was executed and delivered. Naturally the prospect of any other person obtaining a sheriff's deed to the same property is remote. What the legislature had in mind no doubt was the rights of innocent third parties, such as we have here. We do not wish to hold that in order to prevent the rights of

third parties from intervening the purchaser must walk directly, from the office of the sheriff to that of the register of deeds and record his deed. We are not compelled to so hold. G. S. 1935, 60-3458, provides as follows:

"The purchaser of real estate at sale on execution or order of sale or special execution must place evidence of his purchase upon record within six months after the expiration of full time of redemption; up to that time the publicity of the proceedings is constructive notice of the rights of the purchaser, but no longer."

This is section 495 of chapter 182 of the code of civil procedure enacted in 1909. The effect of it is to give purchasers of property at a sheriff's sale six months after the expiration of the period of redemption, during which time third parties must take notice of the proceedings and take title subject to the outcome of the litigation regardless of whether the deed has been recorded. Construing both these statutes together the effect is to provide that the purchaser of land at a tax foreclosure action has six months after the delivery of the sheriff's deed within which to record it in order that his deed may be notice to the public. For six months after the sheriff's deed is delivered to a purchaser of real estate at a tax foreclosure sale the pending of the action is notice to third parties of the purchaser's interest.

The argument of defendant is that the doctrine of *lis pendens* applies to this case. The statute (G. S. 1935, 60-2601) is, in part, as follows:

"When the petition has been filed, the action is pending, so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject matter thereof as against the plaintiff's title; but such notice shall be of no avail . . ."

It will be noted the above section provides that the pending of an action is notice only while the action is pending. This record does not disclose whether the tax foreclosure action was still pending when plaintiff obtained his deed from the heirs about four years later. Certainly, however, it was not pending as to the heirs of this piece of land more than six months after the delivery of the sheriff's deed. Such is the effect to be given G. S. 1935, 60-3458.

The judgment of the trial court is reversed with directions to enter judgment for plaintiff in accordance with the views herein expressed.