466 P.2d 108

Theresa C. ARMIJO, Plaintiff-Appellant,

v.

VIA DEVELOPMENT CORPORATION,
a New Mexico Corporation, De-
fendant-Appellee.

No. 8810.

Supreme Court of New Mexico.

Feb. 2, 1970.

Rehearing Denied March 16, 1970.

Motion for Leave to File Second Rehearing
Denied March 31, 1970.

Valdez & Coleman, Santa Fe, for plain-
tiff-appellant.

Zinn & Donnell, Santa Fe, for defend-
ant-appellee.

## OPINION

JAMES W. MUSGROVE, District
Judge.

Appellant originally filed suit in the Dis-
trict Court of Taos County seeking to set
aside a deed issued to appellee by the New
Mexico State Tax Commission claiming
appellant had a prior right to repurchase
the land in question but had been prevent-
ed from doing so by fraudulent acts of an
employee of the Tax Commission. The
case was tried to the court, and at the
close of appellant's case a motion to dis-
miss the complaint was granted. Appellant
appeals.

The following summary of facts found
by the trial court was not challenged by

the appellant: The real estate which is the subject matter of this suit is in Toas County and was patented to Lloyd R. Gilliland in 1927. The land was sold by the Taos County Treasurer for nonpayment of the 1940 taxes and was transferred to the State of New Mexico by tax deed dated July 22, 1950. Upon expiration of the redemption period, the New Mexico State Tax Commission advertised the property for private sale. On December 5, 1962, appellee submitted a bid in the amount of $1,920.00 which was the highest bid received. Despite the pendency of appellee's bid, the Tax Commission, on December 31, 1962, issued a deed for the land to one Elmer N. Garcia, who was involved in numerous tax title scandals at the time. This deed was cancelled by court decree on May 12, 1965, and the land was transferred back to the Tax Commission by quitclaim deed from Garcia dated June 28, 1965 and recorded July 2, 1965. Appellant was well acquainted with Elmer N. Garcia, and he advised her that as a result of the litigation he was deeding the land back to the Tax Commission, and that she should get title to the land from the former owner, Gilliland, who lived in Oklahoma City, and that she should then redeem the tax title from the Tax Commission. Acting on these suggestions, appellant entered into a real estate contract on October 17, 1964 to purchase the land from Gilliland. Appellant received a warranty deed to the land from Gilliland dated June 22, 1965, which was recorded in Taos County on August 27, 1965. On August 30, 1965, appellee paid $1,920.00 to the Tax Commission, and on the following day the Tax Commission issued to appellee a deed to the land in question which was duly recorded. Subsequent to the issuance of the deed to appellee, appellant, on August 31, 1965, tendered an application to repurchase the land from the Tax Commission; but her application was rejected since the land had been sold.

■ Since the above facts were not challenged they become facts in the reviewing court. Morton v. Great American

Insurance Co., 77 N.M. 35, 419 P.2d 239 (1966); Morris v. Merchant, 77 N.M. 411, 423 P.2d 606 (1967).

The following facts found by the trial court were challenged by the appellant who claimed that there was not substantial evidence to support such findings:

"8. On or about August 5, 1965 the plaintiff made inquiry at the Tax Commission of an employee as to the possibility of purchasing the tax title to the property, but at the time her warranty deed had not been recorded, she had made no written application to repurchase the property as required by the regulations of the commission, nor did she make tender of the money necessary for the repurchase.

"9. At the time the plaintiff made inquiry concerning the possibility of repurchase she was advised that the tax title was still involved in litigation, and at such time the legal right of the Tax Commission to issue tax titles on numerous tracts of land, including the one in question, was being determined by the Attorney General as the result of court orders determining them to be void, and the Tax Commission and its employees were awaiting instructions on the subject from its legal advisor; and the exact legal status of the tax title in question was unknown to the Tax Commission employee who answered the inquiry of plaintiff, she was not authorized to accept bids on same, and there was no intent to deceive the plaintiff or give her misinformation.

"10. On August 19, 1965, the defendant advised the Tax Commission by letter that its 1962 bid on the tract was still firm, and on August 24, 1965, the Tax Commission formally accepted the bid."

From the foregoing facts the court concluded as a matter of law, among others, that plaintiff's oral inquiry of August 5, 1965 at the Tax Commission as to the status of the tax title to the property did not amount to the exercise of a first and prior right to repurchase under the statute in

force at the time; that plaintiff's application to repurchase the property as successor to the former owner was not timely, and her prior right to repurchase, if any, was extinguished because defendant's application to repurchase was received and accepted by the Commission before her application was made; that the plaintiff had failed to establish by clear and convincing evidence that there was fraud, either actual or constructive, on the part of the Tax Commission or its employees in advising the plaintiff on August 5, 1965 that the property was not subject to repurchase; and that the plaintiff had failed to overcome the prima facie evidence of regularity in the tax sale proceedings afforded by the tax deed issued to defendant.

The trial court concluded that the legal rights of the parties were governed by § 76–740, N.M.S.A., 1941 Comp., as amended in 1943, and quoted a portion of this section. Appellant concedes that § 76–740, supra, is applicable. The applicability of the 1943 amendment is not an issue.

Section 72–8–45, N.M.S.A., 1953 Comp., states in part:

"* * * [T]he provisions of this act shall not apply to property to which the state has acquired title * * * by reason of sale to the state for taxes delinquent for 1949 and years prior to 1949. The provisions of existing law prior to the effective date of this act * * * shall remain in full force and effect as to all property to which the state has acquired title * * * by reason of sale for delinquent taxes for 1949 and years prior to 1949."

Section 76–740, supra, as amended in 1943 and as applicable here, stated in part (this is the same as it read prior to the 1943 amendment):

"The person * * * whose title to * * * property * * * has been extinguished by the issuance of a tax deed to the state shall have the first and prior right to repurchase such property, provided that application for such repurchase is received by the state tax commission before any other application to purchase such property is received and accepted by said commission."

Section 76–741, N.M.S.A., 1941 Comp., as amended in 1943, stated:

"Any person may make application to purchase any property held by the state under tax deed by making a bid, in writing, to the state tax commission stating the amount which he is willing to pay therefor and whether such purchase is to be made for cash or under contract. And in the event that application for repurchase has not been made by any person entitled thereto under Section 1 (76–740) hereof, the Commission may accept said bid if it deems the same to be adequate. If more than one adequate bid is received for the same property, the Commission *shall* accept the highest and best adequate bid by it received." (Emphasis added.)

■ The formal acceptance of the bid was delayed pending the legal determination that the sale to Garcia was void. Appellant argues that the appellee's bid was rejected by the acceptance and sale of the land to Garcia. This is without merit. As the sale to Garcia was a nullity, it would have no effect on the bid of the appellee.

■ Appellant, in attacking the court's findings numbers 8 and 9, argues that her appearance at the office of the Tax Commission and her conversation with an employee of the Commission amounted to a valid offer to repurchase, or, if deficient in any respect, such deficiency was caused by the fraudulent conduct of the employee of the Tax Commission. With this we cannot agree. There were only two witnesses that testified concerning this aspect of the case, the appellant and Mrs. Stella T. Romero. It was for the trial judge as the trier of fact to determine the weight and credibility to be given the testimony of witnesses, and we will not interfere with the trial court's judgment in that respect.

Crumpacker v. Adams, 77 N.M. 633, 426 P.2d 781 (1967); Gruschus v. C. R. Davis Contracting Company, 75 N.M. 649, 409 P. 2d 500 (1965).

A review of the record discloses that the trial judge resolved any conflict in the testimony, and that his findings are supported by substantial evidence and, therefore, cannot be disturbed.

This court in De Baca v. Perea, 52 N.M. 418, 200 P.2d 715 (1948), in interpreting § 76–740, supra, had this to say:

"In addition to the right to redeem the property before the issuance of a tax deed to the State, the law gives the former owner, or one claiming under him, the first and prior right to repurchase the property from the State after the issuance of a tax deed to it by the county treasurer by complying with the provisions of Section 76–740, 1941 Compilation. This is purely statutory and, if claimed, must be exercised in the manner and within the time provided by statute or the right is lost. To protect, preserve and enjoy the preferential right to repurchase the land from the State on the most favorable terms authorized by the Act, the former owner or one claiming under him, must comply with its provisions. He must make application to repurchase and claim the preferential right therein given him before any other application has been made for the repurchase of the land."

The court also said:

"* * * [T]his does not mean that such owner, or one claiming under him, may delay making his application and offer to repurchase and claim his preferential right until after another has made his for such sale, and then make the offer, assert the right and demand the benefits of a statute with which he has not complied."

In Hargrove v. Lucas, 56 N.M. 323, 243 P.2d 623 (1952), the court dealing with the same statute stated the following:

"The deed from the County Treasurer to the State of New Mexico stripped the former owner of all interest in the land and conveyed a fee simple title to the grantee. Alamogordo Improvement Co. v. Hennessee, 40 N.M. 162, 56 P.2d 1127. True, as an act of grace, by Sec. 76–740, N.M.S.A. 1941 Compilation, the former owner was given a preferential right of repurchase, but this was conditioned on his making application therefor to the State Tax Commission before anyone else had applied."

In addition to attacking certain of the findings of the trial court, appellant also contends that the trial court erred in refusing to adopt certain of appellant's requested findings of fact and conclusions of law. This contention is without merit. Where the evidence is conflicting, the refusal to make findings and conclusions favorable to the unsuccessful party cannot be sustained as error. Gilon v. Franco, 77 N.M. 786, 427 P.2d 666 (1967); Varney v. Taylor, 77 N.M. 28, 419 P.2d 234 (1966).

In passing on appellee's motion to dismiss the complaint at the close of appellant's case, the trial court had the right to weigh the evidence presented and determine whether a prima facie case had been established. Palmer v. Denver & Rio Grande Western Railroad Co., 75 N.M. 737, 410 P.2d 956 (1966).

The findings of the trial court were based on substantial evidence and well supported the legal conclusions drawn therefrom. The judgment dismissing the appellant's complaint will be affirmed.

It is so ordered.

MOISE, C. J., and WATSON, J., concur.