## Terrance F. Gage et al v. Union Mutual Fire Insurance Co.

[ 169 A.2d 29 ]

January Term, 1961

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed February 2, 1961

*Lee E. Emerson* for the plaintiffs.

*W. Edson McKee* for the defendant.

**Hulburd, C. J.** The defendant was one of two insurers of a building owned by the plaintiffs. The policy insured against loss by fire and a number of other hazards named in the policy. It specifically provided: "This policy also insures against all direct loss to the property by the following perils: * * * 9. Collapse: Loss by collapse shall mean only the collapse of the building(s) or any part thereof."

In the plaintiffs' action on the policy the court below found in finding No. 11: "The damage to the property in question consisted of a buckled ceiling; the raising of the floor in the center of the cottage with the consequent splitting of the linoleum flooring; plumbing out of line and bent; the sill of the door dropped five inches from a level with the center of the floor; a splitting of the fireplace and a pulling away of the chimney of the fireplace from the building; and a movement of some of the cedar posts off from the cement footings." The court went on to conclude in finding No. 15: "The damage to the building constituted a collapse or partial collapse." From a judgment for the plaintiff, the defendant is here on appeal claiming error. It is the defendant's position that finding No. 11 fails to disclose "the collapse of the building(s) or any part thereof" within the meaning of the policy.

As a preliminary matter, the plaintiffs protest that the defendant's contention is not one proper for our consideration by reason of 12 V.S.A. §1074. Under this provision, they point out, a general denial puts in issue only the execution of the policy and the amount of the damages. This is quite true. *Shields* v. *Vermont Mutual Fire Ins. Co.,* 102 Vt. 224, 244, 147 A. 352; 49 A.L.R.2d 167.

The purpose of the act was to preclude a defendant from relying on a defense unless it was specifically pleaded. *Poole* v. *Massachusetts Mutual Accident Association,* 75 Vt. 85, 88, 53 A. 331. An examination of the defendant's answer discloses that it pleaded as follows: "The company denies that any damage was caused to plaintiffs' buildings as alleged by reason of collapse and by weight of snow and ice." Such an answer specifically directed the plaintiffs' attention to the defense claimed. An intention to contest the very issue before us was manifest. It was not a mere general denial. The plaintiff's contention to that effect is not well founded.

We come now to the real question: Did the loss suffered by the plaintiffs constitute a "collapse of the building(s) or any part thereof?" An answer to this question can only be found by interpreting the language of the policy and applying it to the facts found. What was the protection which it can fairly be said the policyholder purchased? It is this that he is entitled to receive.

In arriving at a determination of this sort, uncertainty in the significance of a term used in an insurance policy is to be resolved in favor of the insured and against the company. *Griswold* v. *Metropolitan Life Insurance Co.,* 107 Vt. 367, 381, 180 A. 649. However, contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken in their plain, ordinary and popular sense. *Johnson* v. *Hardware Mutual Casualty Co.,* 108 Vt. 269, 277, 187 A. 788. Certainly not every damage incurred with respect to a building can be said to be a "collapse." Thus, if a few shingles are blown from the roof—or for that matter, all of them—no one, for a moment, using language in its ordinary sense, would speak of a "collapse" of a part of a building as having taken place. On the other hand, if the entire roof fell in, we have an occurrence which comes within the definition of the word "collapse" as given by Webster: "To fall together suddenly, as the two sides of a hollow vessel," or that given in the Century Dictionary: "To fall together or into an irregular mass or flattened form, through loss of firm connection or rigidity or support of the parts or loss of the contents, as a building through the falling in of its side, or an inflated bladder from the escape of the air contained in it." It cannot be said that the term "collapse" does not carry with it a definite meaning denoting a speci-

fic sort of an occurrence with respect to a building; a meaning which precludes damage resulting in other manners.

The case of *Central Mutual Insurance Company* v. *Royal,* 269 Ala. 372, 113 So.2d 680, 72 A.L.R.2d 1283, is very much in point. The language of the policy involved was identical with that found here. It is, of course, inevitable that the damage to the building concerned in that case, as in each individual case, took its own peculiar form. Perhaps the important aspect of the problem comes in the things which didn't happen rather than what did. The court there said: "In the case at bar, there was no collapse of the building. There was no collapse of any part of the building * * * There was no falling in, no loss of shape, no reduction to flattened form or rubble of the building or any part thereof." The court went on to deny recovery under the collapse provision of the policy. In the annotation in connection with this case in 72 A.L.R.2d 1287, the annotator ventures to state that it seems that in order to come within such coverage, the building must lose its distinctive character as a building. The majority of the cases support this statement as does Couch, Cyclopedia of Insurance Law, §1198. It has otherwise been stated that the building must become in such condition that it cannot be repaired and still be the same building. *Teutonia Insurance Co.* v. *Bonner,* 81 Ill. App. 231. Of the few jurisdictions which have had occasion to pass on this question, perhaps only Kansas may be said to have taken a distinctly divergent view. In *Jenkins* v. *United States Fire Insurance Co.,* 185 Kan. 665, 347 P.2d 417, that court said at p. 671 that "the settling, falling, cracking, bulging or breaking of the insured building or any part thereof, in such manner as to materially impair the basic structure or substantial integrity of the building is to be regarded as a collapse of the building within the meaning of that word as used in such clause of the policy."

This definition is far too expansive to be predicated on the word "collapse" as it is commonly understood. We see no reason to reject the plain ordinary meaning of such a word in favor of the definition laid down by the Kansas court. No doubt coverage of this sort would be a desirable coverage for a policyholder to have, but we do not think it can be fairly said to be the coverage which the policyholder bought. The fact that the Kansas rule was applied in *Travelers Fire Insurance Co.* v. *Whaley,* 10 Cir., 1959, 272 F.2d 288, cannot be regarded as

further·authority for the Kansas rule since the case was one in which the federal courts were bound to apply Kansas law.

Even if we were to adopt the extended definition of the Kansas court, we are not satisfied that the findings of the court below would be sufficient to justify a judgment for the plaintiff in this case.

We should have a care that the source of difficulty in the expression "collapse of the building(s) or any part thereof" does not arise more from the words "or any part thereof" than from the term "collapse." The term "partial collapse" used by the court below may be an epithet of convenience but it is not to be regarded as a term of construction. The policy says nothing about "partial collapse." Where the claim pertains to a collapse of a part of a building, there must be a collapse of that part. A partial collapse of a part is entirely outside the contemplation of the parties to the insurance contract.

The findings of the court below do not support the judgment entered. It can not stand.

· · *Judgment reversed and judgment for the defendant to recover its costs.* ·